COMMONWEALTH *VS.* ELIEZER PEREZ
(and four companion cases[1]).

No. 97-P-1008.

Hampden. October 5, 1998. - August 20, 1999.

Present: ARMSTRONG, GILLERMAN, & KASS, JJ.

*Evidence,* Relevancy and materiality, Motive, State of mind. *Practice, Criminal,* Instructions to jury, Argument by prosecutor. *Intimidation of Witness. Joint Enterprise.*

At the trial of indictments, the judge did not err in denying the defendants' motion in limine to exclude evidence of the defendants' memberships in a gang, where the evidence was relevant to the defendants' motive and state of mind, and the judge's instructions to the jury minimized the risk that the jury might improperly weigh that evidence. [608]

Evidence at the trial of indictments alleging intimidation of a witness, and reasonable inferences drawn therefrom, were sufficient to warrant the fact finder's determination that the defendants knew the victim was a witness in a criminal trial and that they intended to dissuade the victim from testifying. [609]

Evidence at the trial of indictments, including reasonable inferences drawn therefrom, was sufficient to warrant the fact finder's conclusion that a particular defendant was a joint venturer in the planned attack on the victim. [609-610]

At a criminal trial, the prosecutor's argument of facts not in evidence, to which the defendant did not object, resulted in no prejudice; and any prejudice resulting from other apparently inadvertent misstatements, to which the defendant did object, was adequately cured by the judge's pointed and forceful instructions to the jury. [610]

Assertedly factually inconsistent verdicts in a criminal case did not warrant the judge's allowing a defendant's motion for a required finding notwithstanding the jury's guilty verdict on the remaining indictment. [610-611]

INDICTMENTS found and returned in the Superior Court Department on November 1, 1995.

---

[1]One of the companion cases is against Eliezer Perez, two are against Jose Cruz, and the fourth companion case is against Adolfo Perez.

The cases were tried before *Bertha D. Josephson*, J., and a postconviction motion to set aside the jury's verdict was heard by her.

*Barbara J. Sweeney* for Eliezer Perez.

*Victor H. Ascolillo* for Jose Cruz.

*Deborah D. Ahlstrom*, Assistant District Attorney, for the Commonwealth.

*Jeffrey S. Weisser* for Adolfo Perez.

ARMSTRONG, J. The defendants Eliezer Perez and Jose Cruz appeal from convictions of witness intimidation (G. L. c. 268, § 13B) and assault and battery by means of a dangerous weapon, to wit: a motor vehicle (G. L. c. 265, § 15A[*b*]). The Commonwealth appeals from an order allowing Adolfo Perez's postverdict motion to set aside the jury's verdict finding him guilty of witness intimidation.

The appeals turn largely on the sufficiency of the evidence presented against the defendants. We set out that evidence in the light most favorable to the Commonwealth.

The victim of the crimes alleged was Joshua Rodriguez, a high school student in Springfield who was a former member of an "organization" (the judge precluded use of "gang," although that word slipped out occasionally in the trial) called the Latin Kings. One night in August, 1995, Rodriguez was witness to "an incident . . . involving the Latin Kings." (The quote is from a pretrial stipulation, intended to minimize detail so as not to prejudice the jury.) Rodriguez went with a participant to tell the defendant Eliezer Perez (who, according to Rodriguez, was second in command, or "second crown," of the Latin Kings) about the incident. The following day Rodriguez alone went to the Springfield police voluntarily and gave a signed statement implicating an unnamed perpetrator, who was, as a result, charged with unspecified criminal offenses. The charged individual was a member of the Latin Kings. The stipulation was silent whether the accused was arrested, but it stated that the case was scheduled for a court hearing on October 27, 1995, at which Rodriguez was to testify.

Rodriguez testified that after he gave the statement to the police his relationship with the Latin Kings changed, such that he "began having problems with them." (Neither the Commonwealth nor the several counsel for the defendants chose to explore the detail of the "problems.")

In the early hours of October 14, 1995 — two weeks before the court hearing — Springfield police came upon a group of six to eight young men on Calhoun Street, including the defendants Eliezer Perez, Jose Cruz, and Adolfo Perez, as well as Tommy Calderon, Ruben Borrero, and Jose Delgado. All but two of these were identified at trial as Latin Kings.[2] The police moved the group along, but twenty minutes later, at 2:50 A.M., received a lookout broadcast for two cars — a blue Honda CRX and an Oldsmobile Delta 88 — that had been parked alongside the group. The cars were gone from Calhoun Street but were seen later, at 3:30 A.M., just before a collision.

The collision, told from Rodriguez's vantage, occurred as follows. He had brought his girlfriend back to her house and was on his way to his brother's home. He stopped to make a telephone call at a telephone booth outside the Peter Pan bus terminal on Main Street in Springfield. From the telephone booth he saw the blue Honda CRX and the Oldsmobile Delta 88 approaching the terminal traveling north on Main Street. Rodriguez recognized Eliezer Perez in the driver's seat of the Honda and Tommy Calderon in the passenger seat. Calderon pointed at Rodriguez and shouted, "There he is!" The Honda turned left, toward Liberty Street, and the Oldsmobile, whose driver Rodriguez recognized as Jose Cruz and passenger as Jose Delgado, extinguished its headlights and bore down on Rodriguez, who was now racing toward his parked car. He jumped headfirst in the driver's door just as the Oldsmobile smashed into the side, shearing off the open door. Rodriguez managed to start the car but found his path blocked by a small, gray station wagon (the police had also seen this car earlier with the Latin Kings group on Calhoun Street; it had driven off as the police approached) driven by Adolfo Perez with Ruben Borrero in the passenger seat. Rodriguez rammed the gray station wagon twice to make his escape.

A police cruiser had happened on the scene as it was unfolding, the officers witnessing the collision. That cruiser and another pursued the Honda and the Oldsmobile. Rodriguez drove his car a short distance to the Paramount Theater on Main Street, where there was another cruiser. Adolfo Perez and Borrero had not fled from the scene. Near the Paramount Theater

---

[2]The two were the defendant Adolfo Perez and Joseph Delgado. On the basis of late disclosure the judge excluded documentary evidence that identified Adolfo Perez as a Latin King.

they remonstrated with Rodriguez as to why he had rammed their wagon. The others — Eliezer Perez, Cruz, Calderon, and Delgado — were brought to Rodriguez's location on Main Street near the corner of Gridiron Street, and were identified by him.

We deal together with the appeals of Cruz and Eliezer Perez.

1. *Evidence of gang affiliation.* The judge did not err in denying the defendants' motion in limine to exclude evidence of the defendants' membership in the Latin Kings. The evidence was relevant to the defendants' motive and state of mind. *Commonwealth* v. *Maldonado,* 429 Mass. 502, 504-505 (1999). "Without the challenged evidence the [attack] could have appeared to the jury as an essentially inexplicable act of violence." *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 269 (1982). Joshua Rodriguez's testimony by itself was sufficient to prove the existence of the organization and the membership therein of most of his attackers. Although it was agreed that the participants in the trial would refer to the Latin Kings as an "organization" rather than as a "gang," that effort to shield the jury, though probably foredoomed to futility, was likely the most that the judge could do to minimize prejudice. The judge could hardly minimize prejudice to the defendants in the jury selection process without asking the potential jurors (as she did) whether their impartiality would be impaired by evidence of a defendant's gang membership. Indeed, defense counsel themselves occasionally used the word "gang" in cross-examining witnesses. Any prejudice was unavoidable.

The judge was not asked to instruct the jury to consider the evidence of Latin Kings membership solely on the issue of motive and state of mind, not for bad character or criminal propensity. The defendants cite no authority for requiring the judge to give such an instruction sua sponte in this instance. See *Commonwealth* v. *Roberts,* 378 Mass. 116, 126 (1979) ("Ordinarily judges are not required, sua sponte, to instruct juries as to the purposes for which evidence is offered at trial"). Particularly given the pains taken in the trial to exclude any reference to Latin Kings' activities other than the attack on Rodriguez, we think the judge's instruction "not to be swayed by sympathy or bias or prejudice or by any affiliation that has been argued" minimized the risk that the jury improperly weighed the evidence of Latin Kings membership. Contrast *Commonwealth* v. *Wolcott,* 28 Mass. App. Ct. 200, 210 n.17 (1990), in which no such warning was given.

2. *Required finding on witness intimidation.* There is no merit to the argument of Cruz and Eliezer Perez that the Commonwealth failed to prove that they had actual knowledge that Rodriguez was to be a witness at upcoming criminal proceedings or a specific intent to influence his testimony. The proof of the defendants' knowledge and intent was necessarily indirect. Considering together the evidence that Rodriguez was an eyewitness to the alleged crime in August, that he gave a voluntary statement to the police, that criminal proceedings were instituted, that his relations with Latin Kings deteriorated from that date, and that the participants met together less than one hour before the attack with the cars that were to be used in the attack, coupled with the concerted nature of the attack by the Latin Kings as a group on Rodriguez — an attack that, whether intended or not, came close to inflicting grave injury — the jury could properly draw the inference that the Latin Kings knew (or suspected) Rodriguez's role and intended at least to dissuade him from giving evidence against one of their members. The witness intimidation statute (G. L. c. 268, § 13B, as amended through St. 1990, c. 369)[3] applied if the defendants knew of the criminal proceeding and believed that Rodriguez was a potential witness. See *Commonwealth* v. *Rondeau*, 27 Mass. App. Ct. 55, 59-61 (1989); *Commonwealth* v. *Burt*, 40 Mass. App. Ct. 275, 277, 278 (1996).

There is no merit to Eliezer Perez's contention that the evidence was insufficient to show he was a joint venturer.[4] The jury could properly draw the inference that it drew from the evidence that Perez was second in command of the Latin Kings, that he and the blue Honda CRX were present at the meeting of the participants one hour before the attack, that he drove the Honda to the scene of the attack at 3:30 A.M., leading another car containing Latin Kings, and that his passenger Calderon pointed out Rodriguez to the other Latin Kings on the scene who actually carried out the attack. "It could be inferred from

---

[3]The statute was amended after the date of the events in this case. See St. 1996, c. 393, §§ 2-4.

[4]The jury found by special verdict that Eliezer Perez "did not drive his vehicle into the victim's vehicle but was a joint venturer with those who did." The question probed the jury's view of a conflict in the testimony. The officers who viewed the collision testified that their memory of the incident was that Eliezer Perez actually struck Rodriguez's car with the blue Honda CRX that he was driving. Rodriguez's recollection was that only the Oldsmobile driven by Cruz struck his.

the evidence that the crime was hardly 'spontaneous' but was instead marked 'by some degree of planning, preparation and purpose.' " *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 243 (1982), quoting from *Commonwealth* v. *Drew*, 4 Mass. App. Ct. 30, 32 (1976).

3. *Prosecutor's closing argument.* In the course of reading the stipulation to the jury, thus disclosing that Rodriguez gave the police a signed statement, the prosecutor added commentary of his own to the effect that everybody knew that he had given the statement, that it was no secret. There was no direct evidence to that effect, and the statement should not have been made in the form it took. It was nevertheless inferable from the deterioration in Rodriguez's relations with the Latin Kings that they were at least suspicious that Rodriguez was responsible for the criminal prosecution that was started against one of their members, an inference that was reinforced by the pointedness of their attack on him, threatening his life. Thus the thought that they knew was a matter of fair inference and thus fair commentary, see *Commonwealth* v. *Earltop*, 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring); and, in any event, the defendants' failure to object "confirms our conclusion that no undue prejudice resulted from these remarks." *Commonwealth* v. *Phoenix*, 409 Mass. 408, 428 (1991). More significant were two statements by the prosecutor implying that one of the two occupants in the Honda CRX (either Calderon or Eliezer Perez) had been named in the statement made to the police by Rodriguez in August. (Apparently Eliezer Perez had been so named, but, contrary to what the prosecutor thought, that fact was not in the stipulation and not otherwise in evidence at the trial.) On timely objection the trial judge gave a particularly pointed and forceful instruction to the jury that there was no evidence to that effect and the mention of it by the prosecutor had been a mistake. The substance of the instruction was approved in advance by counsel for Eliezer Perez, and was adequately curative.

4. *Joint venture liability of Adolfo Perez.* The jury returned verdicts finding Adolfo Perez not guilty of assault and battery with a dangerous weapon but guilty of witness intimidation. The judge allowed Adolfo Perez's postverdict motion for a required finding notwithstanding the guilty verdict, and the Commonwealth appealed. The judge's ruling was, in our view, in error. The jury's arguably inconsistent verdict on the assault

and battery charge did not require (as the judge recognized) a not guilty verdict on the witness intimidation charge. See *Commonwealth* v. *Diaz*, 19 Mass. App. Ct. 29, 33 (1984). Rather, the judge was concerned with the facts that Adolfo Perez was not (so far as the evidence stood) a Latin King (see note 2, *supra*), that his presence at the 2:30 A.M. meeting of the perpetrators was one hour remote in time from the attack (see *Commonwealth* v. *Ahart*, 37 Mass. App. Ct. 565, 571 [1994]), and that his presence at the bus terminal blocking egress for Rodriguez's car may have been fortuitous.

The question presented by the motion was one of law (legal sufficiency of the evidence), not one of fact or discretion (weight of the evidence). See *Commonwealth* v. *Elliffe*, ante 580, 584 (1999), and cases cited. In our view the slight differences between Adolfo Perez's position and those of the other defendants do not justify a different result. Even if there was no direct evidence that Adolfo Perez was himself a Latin King, the passenger in his car, Rubin Borrero, was a Latin King, and Adolfo Perez was with the Latin Kings both at their 2:30 A.M. meeting and at the 3:30 A.M. attack. In the circumstances the jury could reasonably infer that his presence at the precise place and time of the attack on Rodriguez, positioned to block Rodriguez's car, was more than coincidental. The *Ahart* case is distinguishable. There, the defendant, Cruz, although he was found driving the getaway car forty-five minutes after the robbery, was not seen at the place of the robbery or in the getaway car at that earlier time. Here, Adolfo Perez was present at what the jury could infer was a meeting to plan the attack and again, we hear later, on the scene of the attack, with his car positioned to impede Rodriguez's escape.

*Conclusion.* The order allowing the motion of Adolfo Perez for a required finding of not guilty is reversed, and judgment is to be entered on the jury's verdict. The judgments of conviction against Eliezer Perez and Jose Cruz are affirmed.

*So ordered.*