COMMONWEALTH vs. DARRYELL A. DRUMGOOLE.

No. 98-P-1556.

Berkshire. January 13, 2000. - April 10, 2000.

Present: ARMSTRONG, SMITH, & BROWN, JJ.

*Intimidation of Witness. Witness,* Intimidation.

Evidence at the trial of complaints alleging intimidation of witnesses was suf-
ficient for a reasonable jury to conclude beyond a reasonable doubt, with
respect to one incident, that the defendant's statements to two witnesses in
a criminal proceeding intimidated those witnesses, that the defendant was
aware of the pending proceeding and knew the witnesses were to testify,
and that the defendant had the specific intent to influence the witnesses;
with respect to a second incident, the defendant's motion for a required
finding should have been allowed, where there was no evidence of any
speech or act on the part of the defendant made with the specific intent of
influencing or otherwise interfering with the criminal proceedings against
him. [90-92]

COMPLAINT received and sworn to in the Pittsfield Division of
the District Court Department on December 1, 1997.

The case was tried before *James B. McElroy*, J.

*Frank M. Barrepski, Jr.*, for the defendant.

*Nicholas B. Kosiavelon*, Assistant District Attorney, for the
Commonwealth.

SMITH, J. The defendant, Darryell Drumgoole, was charged in
the District Court with two counts of threatening to commit a
crime and five counts of intimidating witnesses, namely
Christopher Jordan and Reginald Altman. After a jury trial, the
defendant was convicted of both counts of threatening to com-
mit a crime and three counts of intimidating witnesses.

The defendant has appealed only from his convictions of
intimidating witnesses, claiming that the evidence was insuf-
ficient to support his convictions of those crimes.

We examine the evidence in the light most favorable to the
Commonwealth. See *Commonwealth* v. *Salemme*, 395 Mass.

594, 595 (1985). As background for the analysis, we also include evidence from the underlying criminal proceeding on the counts charging threats to commit a crime.

A. *Evidence of the threats to commit a crime.* The defendant owned a restaurant in Pittsfield. On September 9, 1997, Christopher Jordan was driving past the defendant's place of business when he saw the defendant's wife coming out of the restaurant. He knew her because he was dating Tia Altman, the sister of his friend, Reginald Altman, who previously had been married to the defendant's wife.

Jordan waved hello to the defendant's wife and she waved back. At that point, the defendant ran out of his restaurant yelling at his wife, inquiring who was she waving at. After speaking to her, he proceeded to Jordan's car, shouting, "Do you know her? Does she know you?" Jordan explained to the defendant that he knew the defendant's wife through Tia Altman.

The defendant then warned Jordan never to talk to his wife again because he did not want her having any contact with her former husband's (Reginald Altman's) family.

On September 12, 1997, Jordan and Reginald Altman (Altman) were stopped at a traffic light near the defendant's restaurant. The defendant ran out of the restaurant yelling, "I have something for you and your boy." He went back into the restaurant, only to reappear and begin shouting profanities at the two men. While standing nearby, he opened his jacket and displayed the handle of a handgun to Jordan and Altman. He then approached the side of their vehicle, put his hand on the gun, and said, "I should do you and your boy right now." Jordan made a U-turn in the road and quickly drove away.

The next night Altman encountered the defendant at Teti's Variety and Luncheonette (Teti's). The defendant told him, "I'm going to get your boy; I'm going to hurt your boy when I see him." Altman subsequently told Jordan about the defendant's threat. Jordan called the defendant at his restaurant and told him where he could be found in the event the defendant actually intended to harm him. The defendant yelled profanities at him and said that he would take care of him the next time he saw him. After listening to the defendant, Jordan and Altman went to the Pittsfield police department and made a report about the handgun incident that had taken place on September 12, 1997. They subsequently went to the District Court and filled out ap-

plications for a complaint against the defendant. On September 17, 1997, the defendant was formally charged with two counts of threatening to commit a crime, to wit, assault and battery with a dangerous weapon. As a condition of his release, the defendant was not to have any contact with Jordan or Altman.

B. *Evidence of the intimidation charges.*

1. *November 18 incident.* On November 18, 1997, while the charges of threats to commit a crime were pending, Jordan and Altman were walking near the defendant's restaurant. The defendant saw them and came out shouting, "Do you think this is over? This is far from over. When I see you, when this is over, I'm going to see you and I'm going to get you. This is not over. Don't think this is over." Jordan took the defendant's comments to mean that after the pending case had concluded, the defendant was going to physically harm Jordan. Jordan and Altman went to the police station and reported the incident.

After another incident, on November 21, 1997, involving only the defendant and Jordan,[1] the defendant was warned by a District Court judge on November 25, 1997, that he had violated the no-contact order and that there would be further repercussions if he had any additional contact with the two complainants.

2. *November 26 incident.* On November 26, 1997, Jordan, Altman, and Altman's father went to Teti's. The defendant was there. As Jordan and Altman, Sr., left, the defendant followed them outside and said to Jordan, "I'm going to see you. This is not over. You think this is over? We're going to, we're going to do this when this is over." The defendant then went back inside Teti's. Meanwhile, Altman, who had remained behind in the luncheonette, was surrounded by a group of people subsequently joined by the defendant. An argument ensued between Altman, the defendant, and some of the defendant's friends. Altman was pushed by the defendant. The owner of Teti's intervened and the altercation moved outside. Once outdoors, the owner again intervened and told everyone to leave, whereupon Jordan and Altman went to the police station and filed another incident report.

3. *The issuance of the complaints and the trial.* On December 1, 1997, complaints for intimidation of witnesses (Jordan and

---

[1]The November 21, 1997, incident was the basis of one of the counts charging intimidation. The jury acquitted the defendant on that count.

Altman) were issued based on the November 18, 1997, and the November 26, 1997, incidents. The trial on the complaints charging threats to commit a crime and intimidation of witnesses took place on January 9, 1998. On January 13, the defendant was found guilty of intimidating Jordan and Altman in regard to the November 18 incident and guilty of intimidating Altman on November 26; he was found not guilty of intimidating Jordan on the latter date.

C. *Discussion.* General Laws c. 268, § 13B, as amended through St. 1996, c. 393, §§ 2-4, provides in relevant part:

> "Whoever, directly or indirectly, willfully endeavors by means of . . . intimidation, force or express or implied threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness . . . in any stage of a trial . . . or other criminal proceeding . . . shall be punished . . . ."

"The purpose of the statute, rather obviously, is to protect witnesses from being bullied or harried so that they do not become reluctant to testify or to give truthful evidence in investigatory or judicial proceedings. The larger purpose is to prevent interference with the administration of justice." *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. 797, 799 (1998).

In order to convict the defendant of intimidating a witness, the Commonwealth was required to prove beyond a reasonable doubt that (1) Jordan and Altman were to be witnesses in a trial or criminal proceeding; (2) the defendant wilfully endeavored or tried to influence Jordan and Altman; (3) he did so by means of intimidation, force, or express or implied threats of force; and (4) he did so with the specific intent of influencing Jordan and Altman as witnesses. See *Commonwealth* v. *Conley*, 34 Mass. App. Ct. 50, 53 (1993).

The defendant claims that, in regard to the November 18 incident, the Commonwealth failed to show that his statements were intimidating and made with the specific intent of influencing or otherwise interfering with the criminal proceedings against him. He also argues that his statements on that date to Jordan and Altman were vague and did not include any reference to the pending case or to Jordan and Altman's roles as witnesses.

"Webster's Third New International Dictionary 1184 (3d ed. 1993) defines intimidate as 'to make timid or fearful: inspire or

affect with fear.' " *Commonwealth* v. *Gordon*, 44 Mass. App. Ct. 233, 235 (1998). Thus, "the essence of intimidation is fear." *Commonwealth* v. *Potter*, 39 Mass. App. Ct. 924, 926 (1995).

A rational trier of fact could find that the defendant's statements to Jordan and Altman on November 18 ("When I see you, when this is over, I'm going to see you and I'm going to get you"), coupled with the evidence that two months prior the defendant had displayed a handgun and told them, "I should do you and your boy right now," caused Jordan and Altman to fear the defendant and, therefore, that the statements were intimidating.

It is not necessary that a defendant's statement or conduct refer directly to a pending court case in order to constitute intimidation. A jury can properly draw an inference from all of the circumstances that a defendant knew of the criminal proceeding. See *Commonwealth* v. *Perez*, 47 Mass. App. Ct. 605, 609 (1999).

Here, the defendant was aware of the pending court matter and also knew that Jordan and Altman were to be witnesses against him. A rational jury could infer from the language used by the defendant ("Do you think this is over? This is far from over. When I see you, when this is over, I'm going to see you and I'm going to get you. This is not over") that he was referring to the pending trial and Jordan's and Altman's role as witnesses.

The defendant also claims that because his November 18 statements took place almost two months before the trial and were not made in the courthouse, there was insufficient evidence to show that he had a specific intent to influence Jordan and Altman in their role as witnesses.

The time, place, and circumstances may be considered in determining whether sufficient evidence has been introduced to show that the defendant had the specific intent to influence witnesses. *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. at 800. However, the fact that the statement or conduct occurs sometime before the pending trial, and not at a courthouse, is not determinative of the issue. See *Commonwealth* v. *Perez*, 47 Mass. App. Ct. at 607 (intimidating conduct took place two weeks before trial and on the street). Intimidating statements made well in advance of trial and outside of the courthouse may be punished if their content warrants it. Here, a jury could find from the content of the November 18 statements and the at-

tendant circumstances that the defendant violated G. L. c. 268, § 13B.

With regard to the November 26 incident, however, we hold that the motion for a required finding of not guilty based on the November 26 conduct directed at Altman should have been allowed. Although conduct as well as speech may result in intimidation of a witness, see *Commonwealth* v. *Perez*, at 607, 609, at most the evidence showed that the defendant bumped Altman in a crowded restaurant. That act, while inferentially hostile to Altman, was not accompanied by intimidating words connecting the act to Altman's role as a potential witness. The words spoken on November 26 that could be found intimidating were directed to Jordan (outside Teti's), not Altman (who was inside). The defendant may have violated a restraining order (a matter for which he was not on trial), but the brief encounter with Altman on November 26 was insufficient to send the complaint charging the defendant with intimidation of Altman on that date to the jury.

The judgments on the counts charging intimidation of witnesses on November 18 are affirmed. The judgment on the count charging intimidation of a witness (Altman) on November 26 is reversed, the verdict is set aside, and judgment is to be entered for the defendant.

*So ordered.*