COMMONWEALTH vs. STEPHEN P. ROBINSON.

Hampshire. November 1, 2004. - April 25, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Criminal Harassment. Statute,* Construction. *Practice, Criminal,* Instructions
to jury. *Intimidation of Witness. Witness,* Intimidation. *Words,* "Substantial
emotional distress."

At the trial of a complaint charging a defendant with criminal harassment in
violation of G. L. c. 265, § 43A, the judge's ambiguous instructions to the
jury on the element of substantial emotional distress, although erroneous,
did not create a substantial risk of a miscarriage of justice, where the error
did not go to any disputed issue in the case or otherwise compromise the
theory of the defense [105-108]; moreover, the evidence introduced by the
Commonwealth at trial was sufficient to meet the standard of substantial
emotional distress as properly defined and to warrant the defendant's
conviction of criminal harassment [108-109].
At the trial of a complaint charging two counts of witness intimidation in
violation of G. L. c. 268, § 13B, the evidence was sufficient to prove, as
to the first count, that the defendant possessed the requisite purpose to
influence the victim as a witness at a show cause hearing, and as to the
second count, that the defendant's photographing of the victim's family
was, in the circumstances, an act of sufficient hostility from which a jury
could reasonably infer that the defendant intended to intimidate. [109-111]

COMPLAINTS received and sworn to in the Northampton Divi-
sion of the District Court Department on October 2 and October
7, 2002.

The cases were tried before *W. Michael Goggins*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Jeanne M. Kaiser* for the defendant.

*Cynthia M. Pepyne*, Assistant District Attorney, for the
Commonwealth.

COWIN, J. A District Court jury found the defendant, Stephen
P. Robinson, guilty of criminal harassment in violation of G. L.
c. 265, § 43A, and of two counts of intimidation of a witness in
violation of G. L. c. 268, § 13B. The defendant was acquitted

of two other counts of witness intimidation and of making a criminal threat during one of the harassment incidents. He appealed, arguing as to the criminal harassment charge that the judge's instruction on substantial emotional distress constituted prejudicial error, and that there was insufficient evidence to warrant a finding that his actions would have caused substantial emotional distress in a reasonable person. As to the witness intimidation charges, the defendant claims that there was insufficient evidence of his intent to influence the behavior of a witness in a criminal proceeding. We transferred the case to this court on our own motion. While we conclude that the evidence of criminal harassment was sufficient for conviction, the jury were improperly instructed as to an element of that offense. However, as there was no substantial risk of a miscarriage of justice from the error, we affirm the conviction of criminal harassment, as well as the convictions for witness intimidation.

*Facts.* We summarize the evidence concerning the charges on which the defendant was convicted in the light most favorable to the Commonwealth. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). At the time in question, the victim lived with his wife and son in Northampton, across the street and about twenty feet away from the defendant, and about one-half mile from the downtown area. Each member of the victim's family was familiar with the defendant. The victim and the defendant both appear to have rented from the same landlord. In June, 2001, the victim spoke to the landlord about the fact that several tenants were "doing drugs," and the victim stated that he would do what it took to get rid of the defendant, and that if the landlord would not "do anything about it, that he [would] do something about it."

In June, 2002, the victim and his family visited their plot in the community gardens, one-half mile from their home. Shortly thereafter, they saw the defendant drive up in a large car, stopping roughly twenty yards from the family, as close as possible, as automobiles are not allowed to drive on the paths leading to the plots. The family recognized the defendant, who was glaring at them. The defendant remained there for almost thirty minutes. They waited for the defendant to leave, and when he did not, they finally tried to leave in their car. The defendant moved his

car to block the road, and the family was forced to drive over a grassy area to leave. The victim found this incident "terrifying."

On July 18, 2002, the victim was sitting in front of a Starbucks coffee shop when the defendant came over to him, "stared menacingly" at him, and clenched his fists. The defendant "moved in" toward the victim's table and said, "I'm going to get a lease anyway, whatever you're doing with the landlord." The defendant also told the victim "about having lots of gay lovers," that he would "wipe the grin off" the victim's face, and that he knew the route the victim used to walk home at night. The incident "absolutely terrified" the victim. Another customer sitting close by, who heard only the end of the conversation, testified that the victim asked the defendant if he was threatening him and the defendant responded that the conversation was going nowhere and that he had to go to work. After the defendant left, the victim reported this incident to the police.

On July 21, 2002, the victim and his family were at the Smith College campus near a waterfall. The defendant parked his car at the top of a hill about forty feet from the victim and his son, and then moved his car down the hill, closer to the victim, and stopped again. The defendant "stared menacingly" at them, causing the victim to become upset and "shaken." His wife, who saw the incident from a distance, also felt frightened. The victim reported this incident to the police as well.

A show cause hearing on these matters was scheduled for October 1, 2002. See G. L. c. 218, § 35A. The three incidents described above appear to have formed the basis of the complaint. The victim, the defendant, the clerk, and Lori Spear, a Northampton police officer, attended the hearing. Spear described the defendant as "glaring" at the victim and acting aggressively during the hearing. At one point, the defendant pushed a table away and said to the victim in a "bloodcurdling way, 'Are you sure you want to go on with this?' " The victim interpreted these words as a threat that the defendant would kill him if he testified. A complaint then issued.

Later that day, as the victim and his family got into their car and were pulling away after a regularly scheduled clinical appointment, one-half mile from their home, the defendant ap-

peared, and, coming toward them from an area between the clinic and another building, photographed the victim's son. He moved to about ten to twelve feet from the car with a camera in his hand, focusing it on the son. This event left the victim shaken, and the family drove immediately to the police department and reported it.

As a result of these incidents, the victim felt vulnerable; his son's school grades dropped because he was nervous; the family sensed they were constantly under surveillance; and they moved to Easthampton in December, 2002.

*Discussion.* 1. *"Substantial emotional distress" instruction.* General Laws c. 265, § 43A (*a*), states in part: "Whoever, willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress, shall be guilty of the crime of criminal harassment . . . ." The judge's instruction on the criminal harassment charge with respect to the element of "substantial emotional distress" was as follows: "The second element requires that the acts were of such a nature that they would cause a reasonable person to suffer substantial emotional distress. 'Substantial' is more than trifling or passing emotional distress." The defendant did not object, but now contends that this formulation erroneously defined the term "substantial" and made the Commonwealth's burden of proof too easy to meet on this element. Where there is no objection, we determine whether the alleged error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Chapman*, 433 Mass. 481, 489 (2001). *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

Section 43A does not define the words "substantial emotional distress," and we have not had occasion previously to interpret them. "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . . We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." (Citations omitted.) *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). See,

e.g., *Commonwealth* v. *Walker,* 442 Mass. 185, 194 (2004) (interpreting term "poison," undefined in statute, with aid of dictionary definition).

The common dictionary definition of "substantial" is "considerable in amount, value, or worth." Webster's Third New Int'l Dictionary 2280 (1993). Other courts, interpreting the same words, have concluded that "the offending conduct must be such as would produce a considerable or significant amount of emotional distress in a reasonable person; something markedly greater than the level of uneasiness, nervousness, unhappiness or the like which are commonly experienced in day to day living," *Wallace* v. *Van Pelt,* 969 S.W.2d 380, 386 (Mo. Ct. App. 1998), and as meaning "something more than everyday mental distress or upset. In other words [it] entails a serious invasion of the victim's mental tranquility." *People* v. *Ewing,* 76 Cal. App. 4th 199, 210 (1999).

The judge's instruction could have been interpreted by the jury as meaning either that *anything* even slightly "more than trifling or passing emotional distress" would qualify as "substantial," or it could have been understood as a mere comparison between the two types of emotional distress from which they would understand that mere "trifling or passing emotional distress" would not suffice. To that extent the instruction was ambiguous and, if the first interpretation were adopted, erroneous. To describe "substantial emotional distress" as anything at all above "trifling or passing" gives the word "substantial" less than its traditional meaning, i.e., "considerable in amount, value, or worth," Webster's Third New Int'l Dictionary, *supra* at 2280, or "[o]f real worth and importance; of considerable value . . . . Synonymous with material." Black's Law Dictionary 1428 (6th ed. 1990).

While the judge's formulation of this portion of the instruction was error, it did not create a substantial risk of a miscarriage of justice because it did not affect the defense that the defendant chose to pursue. Defense counsel argued in her closing that none of these incidents had occurred in the manner testified to by the victim and his family, and that the victim fabricated these incidents in a vendetta against the defendant. The prosecutor countered that the victim's version of the

incidents was credible. Neither the prosecutor nor the defense counsel ever discussed the degree of impact of the incidents or the meaning of the term "substantial emotional distress." The ambiguity in the judge's instruction did not go to any disputed issue in the case or otherwise compromise the theory of defense. We can say with assurance that the error did not have a material effect on the outcome of the trial. See *Commonwealth* v. *Jenkins*, 47 Mass. App. Ct. 286, 292 (1999) (citations omitted) ("[i]ncorrect instructions on an element of a crime have not created a substantial risk of a miscarriage of justice where the defense strategy at trial was incorrect identification, . . . or self-defense"; affirming conviction where omission of elements of stalking statute did not affect defendant's alibi defense at trial); *Commonwealth* v. *Gabbidon*, 398 Mass. 1, 5 (1986) ("whether a particular element of a crime was contested at trial is important to a determination whether a trial error resulted in a substantial risk of a miscarriage of justice . . . whether the gunman possessed the specific intent to kill . . . did not relate to an issue actively contested at trial."). See also *Commonwealth* v. *Mezzanotti* 26 Mass. App. Ct. 522 (1988). Compare *Commonwealth* v. *Freeman, supra* at 564 (new trial ordered due to mistake in instruction that may have materially influenced outcome of trial).

The judge may have based his erroneous instruction on the language in Massachusetts Superior Court Criminal Practice: Jury Instructions § 2.24 (Mass. Continuing Legal Educ. 2003), which describes "substantial emotional distress," as it appears in G. L. c. 265, § 43 (*a*), the stalking statute, as "more than trifling or passing emotional distress." According to a footnote, this instruction derives from cases describing the physical injury element of an assault and battery conviction based on the intentional commission of a wanton or reckless act. See, e.g., *Commonwealth* v. *Burno*, 396 Mass. 622, 627 (1986); *Commonwealth* v. *Appleby*, 380 Mass. 296, 308 n.7 (1980). As conviction of assault and battery does not require the Commonwealth to prove infliction of "substantial emotional distress," these cases are not useful in defining that term. As described above, this formulation of the meaning of substantial emotional distress is potentially unclear to the jury and should not be given.

In the future, judges should define "substantial emotional distress" more specifically, in line with the dictionary definitions, detailed *supra*, emphasizing that emotional distress that is merely trifling or passing is *not* enough to satisfy this element, but must be markedly greater than that commonly experienced as part of ordinary living.

2. *Sufficiency of evidence of criminal harassment.* The judge denied the defendant's motions for the entry of a required finding of not guilty on all charges submitted at the close of the Commonwealth's case and at the close of all the evidence. We now must consider whether the jury would have been warranted in determining that the evidence was sufficient to meet the standard of substantial emotional distress if properly defined. In reviewing the denial of a motion for a required finding of not guilty, "we must look at the evidence in the light most favorable to the Commonwealth to determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Ruci*, 409 Mass. 94, 96 (1991), citing *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

The defendant argues that, even though his actions caused the victim subjective serious alarm, these actions would not have caused a reasonable person to suffer substantial emotional distress. Considering the evidence in the light most favorable to the Commonwealth, the facts indicate that a reasonable person would have suffered substantial emotional distress as a result of the defendant's behavior in the three incidents prior to the show cause hearing.

We held today, in the case of *Commonwealth* v. *Welch, ante* 80, 89-90 (2005), that a criminal harassment conviction pursuant to G. L. c. 265, § 43A (*a*), requires that the defendant engage in at least three incidents. The jury had sufficient evidence to find three harassing incidents in the instant case. In the episode at the community gardens, the defendant sat in his car and "glared" at the victim. He blocked the road from the garden plot, forcing the family to drive its car over a grassy area. At the confrontation in front of the coffee shop, he moved close to the victim, clenched his fists, and stated that he would "wipe the grin" off the victim's face. In the third incident by

Commonwealth *v.* Robinson.

the waterfall, the defendant stopped his car twice near the victim and his son, and "stared menacingly" at them. There was evidence that the defendant followed the victim home, and that the defendant's behavior caused the victim to change his address. The jury could find that these incidents of oppressive and harassing behavior were sufficient to generate in a reasonable person "substantial emotional distress" as we have defined that term.

3. *Sufficiency of evidence of witness intimidation.* The defendant also contends that his two convictions of witness intimidation based on his actions on October 1, 2002 (the day of the show cause hearing), are improper because the judge should have granted his motions for a required finding of not guilty. Conviction of witness intimidation under G. L. c. 268, § 13B,[1] requires the Commonwealth to prove beyond a reasonable doubt that "(1) the target of the alleged intimidation was a witness in a stage of a criminal proceeding, (2) the defendant wilfully endeavored or tried to influence the target, (3) the defendant did so by means of intimidation, force, or threats of force, and (4) the defendant did so with the purpose of influencing the complainant as a witness." *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. 797, 799 (1998).

The defendant maintains that a jury could not conclude that he possessed the requisite purpose to influence the victim as a witness at the show cause hearing. He argues that it would have been illogical for him to seek to intimidate the victim in the presence of the clerk, and that the victim was not intimidated because he testified immediately thereafter. We do not find this argument persuasive. The statute punishes anyone who "wilfully endeavors" to intimidate a witness; it does not require that the intimidation be successful. See G. L. c. 268, § 13B. In addition, the timing of the defendant's actions makes it more, rather than less, likely that he was trying to intimidate the witness. In

---

[1]General Laws. c. 268, § 13B, provides, in relevant part:

> "Whoever, directly or indirectly, wilfully endeavors by means of . . . intimidation, force or express or implied threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial, grand jury or other criminal proceeding . . . shall be punished . . . ."

the case of *Commonwealth* v. *McCreary, supra* at 798, the Appeals Court sustained the conviction of a defendant who intimidated a witness immediately before trial. In the instant case, the defendant acted aggressively and glared at the victim at the show cause hearing. He pushed a table away, and the victim described the defendant as asking in a "bloodcurdling way, 'Are you sure you want to go on with this?' " A jury could find that asking this question of the victim just before he was to testify reasonably could be viewed as an attempt to influence the victim to alter his testimony, or even drop the charges. The Appeals Court has noted that "contact with the witness at the very brink, both in terms of time and place, of the witness function is a particularly material fact." *Id.* at 801. There is thus sufficient evidence to uphold this conviction.

The defendant also claims that he could not be convicted of intimidation for photographing the victim's family later that same day, both because the victim was no longer a witness and because the defendant lacked the requisite intent. As to the defendant's first argument, the jury reasonably could infer that, although the show cause hearing had concluded, the defendant was aware that proceedings were ongoing. The defendant was present at the show cause hearing; clearly the application had not been denied (the jury were hearing the criminal case of harassment). At the show cause hearing, either the clerk announced in the defendant's presence that a criminal complaint was issuing (in which event the defendant surely would know that the proceeding was continuing), or the clerk took no action and issued the complaint later. See G. L. c. 218, § 35A.[2] In the latter situation, the defendant still would be on notice that the proceeding was ongoing because the hearing had been held and no action had been taken.[3] It would be unreasonable for him to assume on those facts that no complaint had issued and that the proceeding had terminated. See

---

[2]General Laws c. 218, § 35A, states, in part:

> "The court, or said officer thereof, may upon consideration of the evidence cause process to be issued unless there is no probable cause to believe that the person who is the object of the complaint has committed the offense charged."

[3]We consider both these alternatives as we have been unable to locate a tape recording or other transcription of the show cause hearing.

*Commonwealth* v. *Perez,* 47 Mass. App. Ct. 605, 609 (1999). See also *Commonwealth* v. *Drumgoole,* 49 Mass. App. Ct. 87, 91 (2000) ("A jury can properly draw an inference from all of the circumstances that a defendant knew of the criminal proceeding").

There was also sufficient evidence that the defendant's purpose was to influence the witness's testimony. In the *Mc-Creary* case, the defendant did not explicitly state that he was trying to intimidate the witness, but the "place, time, and circumstances" of his approach brought him within the realm of the statute. *Commonwealth* v. *McCreary, supra* at 800. See *Commonwealth* v. *Gordon,* 44 Mass. App. Ct. 233, 236 (1998) (defendant's behavior can still qualify as intimidation even if not "overtly threatening"). In the instant case, on the same day as the show cause hearing, the defendant appeared in the downtown area one-half mile from the victim's house, and aimed a camera at his family. The place, time, and circumstances of this approach bring him within the statute's scope. These actions are distinguishable from those in the case of *Commonwealth* v. *Drumgoole, supra* at 89. There, the defendant made a threat to another party, and then got into an argument with the victim and pushed him. There was no evidence of the topic of the argument. *Id.* at 92. Evidence of an argument is not by itself sufficient to warrant a finding of intimidation, and such a finding on that state of the evidence would be totally speculative. By contrast, the defendant's photographing of the victim's family was, in the circumstances, an act of sufficient hostility that the jury could reasonably infer that the defendant intended to intimidate.

*Conclusion.* The defendant's convictions of criminal harassment and witness intimidation are affirmed.

*So ordered.*