Commonwealth *v.* Braica.

## COMMONWEALTH *vs.* KENNETH J. BRAICA.

No. 06-P-711.

Hampshire. January 9, 2007. - February 15, 2007.

Present: KAFKER, BROWN, & GREEN, JJ.

*Criminal Harassment.*

The evidence at the trial of a criminal complaint was insufficient to convict the defendant of criminal harassment in violation of G. L. c. 265, § 43A(*a*), where the Commonwealth failed to establish that the complainant was "seriously alarmed" by the harassing remarks made to her by the defendant. [246-248]

COMPLAINT received and sworn to in the Ware Division of the District Court Department on May 2, 2002.

The case was heard by *Philip A. Beattie,* J.

*Ronald H. Cody* for the defendant.

*Steven Greenbaum,* Assistant District Attorney, for the Commonwealth.

KAFKER, J. After yelling and cursing out his window at his next door neighbor and filing a barrage of complaints with government officials about her activities on her property, the defendant, Kenneth J. Braica, was convicted of criminal harassment in violation of G. L. c. 265, § 43A(*a*). The defendant claims that the nasty remarks he yelled from his window were insufficient to support the conviction, and that the complaints to government officials could not be relied on to prove criminal harassment. The Commonwealth contends that the remarks were sufficient to prove criminal harassment without considering the complaints to government officials. As we conclude that there was no evidence that the next door neighbor was seriously alarmed by anything but the numerous complaints to government officials, particularly those resulting in citations and a cease and desist order against her, we reverse.

*Background.* The defendant resided in a second-floor apartment in a building owned by the Belchertown Housing Authority. He is disabled and suffers from asthma, emphysema, diabetes, and chronic obstructive pulmonary disease. Joanne Winsor lived in a large building next door. Winsor owned this building, which contained seven apartments. Her young son and her boyfriend lived with her, and she rented out the other apartments.

When Winsor walked her son to school, she took a short cut across the Belchertown Housing Authority property, about one hundred feet away from the defendant's second-floor window. "[A]bout three times a week he would yell at us out the window, obscenities . . . . 'Get the blank out of here.' . . . The behavior started when [her son] was in kindergarten [in 1997] and continued through his third grade . . . ." When Winsor was in her backyard, the defendant would also yell obscenities out his window, apparently about the smoke from her wood-burning furnace or the condition of her yard. She described this yelling as on-going, occurring "about . . . every two weeks."

Beginning in 1997, the defendant also filed numerous complaints about Winsor with government officials. He contacted the town fire department and the United States Environmental Protection Agency regarding smoke from the furnace, and Winsor was issued a citation. He complained about trench digging in her backyard, which resulted in a cease and desist order from the town conservation commission for digging in a wetland. He also filed numerous complaints with the board of health regarding a mulch pile and debris, and with the town dog officer regarding Winsor's dog whenever the unleashed dog "put its foot in the neighboring yard."

When asked at trial about the effect of her "encounters" with the defendant, Winsor testified "once that I . . . kn[e]w that it [was] Mr. Braica, I . . . fe[lt] differently. Before, when I could not find out who it was, and I would get complaints, complaint after complaint and I was a single mom running this big, huge apartment house, and had lots of issues of my own to deal with, I was completely overwhelmed about who could be complaining all the time. I really was completely devastated by it." She

further testified that she would sell her house if she could.[1]

Although the Commonwealth proceeded to trial relying on both the statements made directly to the victim and the reports to government officials, the judge in this bench trial stated that he was "not convinced that these complaints to various agencies . . . constituted criminal harassment." After so ruling, he nonetheless convicted the defendant of criminal harassment.

*Discussion.* General Laws c. 265, § 43A(*a*), as inserted by St. 2000, c. 164, provides, in relevant part:

> "Whoever willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress, shall be guilty of the crime of criminal harassment . . . ."

The statutory language has been further illuminated by the Supreme Judicial Court. A "pattern of conduct or series of acts" requires at least three separate incidents. *Commonwealth* v. *Welch*, 444 Mass. 80, 89 (2005). Those incidents must have occurred after the statute became effective on October 30, 2000. *Id.* at 90-91. The "acts" may include harassing statements as well as harassing conduct, so long as "constitutionally protected speech" is not punished. *Id.* at 98. "To the extent the statute implicates harassing speech, it appears intended to reach primarily what would be considered 'fighting words.' " *Id.* at 98-99. The words must also be "directed at a specific person" with the "sense [being] that they are a face to face personal insult." *Id.* at 99 (citation omitted).

There are also both subjective and objective components to the harm to be proved: the acts must "seriously alarm" the person to whom they are directed. G. L. c. 265, § 43A(*a*). If the acts would not "cause a reasonable person to suffer substantial emotional distress," the subjective reaction is insufficient. *Ibid.* See *Commonwealth* v. *Robinson*, 444 Mass. 102, 108 (2005). See also *Commonwealth* v. *Paton*, 63 Mass. App. Ct. 215, 220-221 (2005).

---

[1] The defendant and Winsor's boyfriend also taunted each other, but the Commonwealth does not contend that there was sufficient evidence to prove beyond a reasonable doubt that the boyfriend was seriously alarmed.

The defendant contends that due to the vagueness of the testimony, there was not sufficient evidence to prove three acts of harassment after October 30, 2000, if complaints made to government authorities were excluded. Nor was there sufficient evidence to establish that Winsor was "seriously alarmed" by anything except the complaints to the government authorities.

The judge properly concluded that the complaints to the various government officials, a number of which led to enforcement actions, could not constitute criminal harassment.[2] The complaints to government officials were not the type of statements that could be punished pursuant to the criminal harassment statute as explicated by *Commonwealth* v. *Welch, supra* at 87-88.[3] Putting those complaints aside, the judge nonetheless concluded that there was sufficient evidence to prove that the defendant, on at least three occasions after October 30, 2000, yelled obscenity-laced remarks at Winsor from his window. In fact, the testimony describes an ongoing practice of this type of boorish behavior that continued after October 30, 2000, including statements made in the presence of Winsor's then-third grade son. Applying the *Latimore* standard, we conclude that the Commonwealth has identified a pattern of activity which, if otherwise meeting the statutory requisites, would constitute criminal harassment. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

Lacking, however, is proof that the yelling and cursing from the second floor window "seriously alarmed" Winsor.[4] This demanding, subjective element of harm must be satisfied by Winsor's testimony and not by conjecture. Cf. *Commonwealth* v. *Kessler*, 442 Mass. 770, 772-774 (2004) (discussing requirements of proving actual "alarm or shock"). Nevertheless, when asked to explain the effects of her encounters with the defendant,

---

[2]The Commonwealth does not challenge that conclusion on appeal.

[3]The Legislature intended to provide "very broad protection for petitioning activities," and not criminal punishment. *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. 156, 162-163 (1996) (interpreting anti-SLAPP statute, G. L. c. 231, § 59H).

[4]We need not, and do not, decide whether the defendant's pattern of yelling out his second-floor window at Winsor and her young child satisfied the objective standard of causing "a reasonable person to suffer substantial emotional distress." G. L. c. 265, § 43A(*a*).

Winsor made no mention of the yelling from the window.[5] What bothered her was the slew of complaints the defendant made to the government. It was these complaints, and the associated government actions, including citations and a cease and desist order, that "completely overwhelmed" and "completely devastated her," not the yelling and cursing from the window. As explained above, complaints to government officials are not criminal harassment pursuant to G. L. c. 265, § 43A(*a*). See *Commonwealth* v. *Welch*, 444 Mass. at 98. See also *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. 156, 162 (1998); *Kobrin* v. *Gastfriend*, 443 Mass. 327, 331-332 (2005); *Cadle Co.* v. *Schlichtmann*, 448 Mass. 242, 248-249 (2007). As these complaints also directly implicate constitutionally protected speech, it was necessary to distinguish the alarm caused by such complaints from any alarm caused by the curses he yelled from his window. *Commonwealth* v. *Welch*, *supra* at 100 ("[s]hould the Commonwealth attempt to prosecute an individual for speech that is constitutionally protected, we would have no hesitation in reading into the statute such a narrowing construction to ensure its application only to speech that is accorded no constitutional protection").

In sum, the Commonwealth has failed to prove that Winsor was "seriously alarmed" by the harassing remarks made to her as opposed to the complaints made to government officials, and therefore the Commonwealth has failed to prove criminal harassment as required by G. L. c. 265, § 43A(*a*).

> *Judgment reversed.*
> *Finding set aside.*
> *Judgment for defendant.*

---

[5]We also note that she continued to take the short-cut despite the yelling.