COMMONWEALTH *vs.* STEPHEN D. PAGELS.

No. 05-P-1435.

Barnstable. February 15, 2007. - July 26, 2007.

Present: CYPHER, GREEN, & SIKORA, JJ.

*Intimidation of Witness. Witness,* Intimidation. *Constitutional Law,* Assistance of counsel. *Due Process of Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, New trial, Trial of indictments together, Appellate Division, Sentence.

At the trial of an indictment charging intimidation of a witness in violation of G. L. c. 268, § 13B, the evidence, when considered in light of the abusive nature of the defendant's relationship with the witness (his girlfriend) and the vehemence and timing of the defendant's conversations with her regarding the contents of her affidavit and her expected testimony at his bail hearing, was sufficient for a rational jury to conclude that the defendant had endeavored to influence the witness by means of force or threats of force. [612-615]

A Superior Court judge, in denying a criminal defendant's motion for a new trial without an evidentiary hearing, did not abuse his discretion in determining that the defendant did not establish that his counsel had rendered ineffective assistance by failing to object to the joinder of certain related charges [615-618], by failing to prevent the defendant's intimidation of a witness [618], or by making certain tactical judgments during the cross-examination of witnesses [618]; further, the defendant's conclusory, elliptical, and uncorroborated allegations regarding counsel's ineffective assistance at proceedings for sentence revision before the Appellate Division warranted the judge's denial of the defendant's motion for relief [618-621].

INDICTMENTS found and returned in the Superior Court Department on September 9 and November 18, 2003.

The cases were tried before *Richard F. Connon,* J., and a motion for a new trial, filed on March 23, 2006, was considered by him.

*Kenneth G. Littman* for the defendant.

*J. Thomas Kirkman,* Assistant District Attorney, for the Commonwealth.

SIKORA, J. A Superior Court jury found the defendant, Stephen D. Pagels, guilty of assault and battery in violation of G. L. c. 265, § 13A, and of intimidation of a witness in violation of G. L. c. 268, § 13B, as amended through St. 1996, c. 393, §§ 2-4. They acquitted him of assault with intent to murder. On appeal the defendant argues (1) that the evidence was insufficient to sustain his conviction of intimidating a witness; (2) that the judge should have allowed his motion for a new trial upon both convictions because the defendant's attorney provided ineffective assistance in multiple instances; and (3) that the judge's failure to conduct a hearing upon the defendant's motion for a new trial was error. We have consolidated the defendant's appeal from the denial of the motion for a new trial with his direct appeal. Because we conclude that the evidence was sufficient for the jury to find the defendant guilty beyond a reasonable doubt of witness intimidation, we affirm that conviction.[1] We affirm also the denial without a hearing of the defendant's motion for a new trial on the claim of ineffective assistance of counsel before and during the trial. Finally, as to the claim of ineffective assistance of counsel at the Appellate Division, we affirm the denial of relief without a hearing, by reason of the weak factual offering by the defendant.

*Facts.* The assault and battery charge resulted from an incident in the Cape Inn Motel in Provincetown, where the defendant was vacationing with his girlfriend, Deborah Rouvalis. The evidence at trial permitted the jury to find the following facts. The couple were staying in room 400 on the second floor. On August 17, 2003, they spent the day and early evening together, sitting near the ocean and consuming mixed drinks. They returned to their hotel at about 10:00 P.M., ordered pizza, and continued to drink. When the pizza arrived, Rouvalis ate some of it in bed, but left crumbs on the defendant's side of the mattress. This circumstance sparked an argument; it quickly escalated to the events underlying the assault and battery charge.

Rouvalis gave two divergent accounts of those events. She provided the first account to Sergeant Carrie Benjamin, a Provincetown police officer, who encountered Rouvalis in the im-

---

[1]The defendant has made no argument on appeal concerning the sufficiency of the evidence on the assault and battery conviction.

mediate aftermath of the incident curled in a fetal position in the corner of a hallway. It was shortly before 1:00 A.M. on August 18. Rouvalis's legs were covered with blood. She was crying and shaking. Rouvalis kept repeating, "He tried to kill me. I'm afraid." Benjamin testified that she had assured Rouvalis that she was safe.

Rouvalis then gave her first account to Officer Benjamin. According to the officer's testimony, Rouvalis told her that during the argument in the room, Pagels had begun to beat her. She had fled into the hallway and screamed for help. The defendant had followed her and grabbed her by the throat. When she had screamed again, he had forced his thumb into her mouth and down her throat, cutting the tissue in the back of her mouth with his fingernail. Rouvalis had started to choke on blood and had experienced difficulty breathing. The defendant had "dragged her down the hall by the throat and [had] tried to throw her out the second-story window." The defendant had told her that he was going to kill her. Rouvalis told Benjamin that the blood on her legs had resulted from spitting it out so that she could breathe. Benjamin also noticed that the skin around Rouvalis's neck was red and blotchy. The testimony of two hallway eyewitnesses supported Rouvalis's account to Officer Benjamin.

Provincetown police Officers James Golden and Thomas Steele arrived at the scene at about 12:45 A.M. and were directed to room 400. The police entered and found the defendant on the bed. They handcuffed him and escorted him from the room.[2]

Daniel Notaro, a paramedic who had arrived in the ambulance summoned to the scene, examined Rouvalis. He testified that he had seen a small laceration in the back of her throat, redness around her neck, and blood on her legs. He had accompanied Rouvalis in the ambulance to the Cape Cod Hospital. She had been treated, released, and brought back to the inn by the police. Officer Steele spoke to Rouvalis in her hotel room and obtained

---

[2]At trial Officers Golden and Steele testified for the Commonwealth. They related that a woman in the hallway had identified Pagels as "the man she saw strangling the woman" and "[the man who had] tried to throw [the woman] out the window"; and that Rouvalis had seen Pagels pass by her in the company of the police and identified him as her assailant.

a written statement from her. The written account was similar to her initial disclosures to Officer Benjamin.[3]

At trial, however, Rouvalis (called by the Commonwealth) gave a different account of the incident. She maintained that the defendant had never threatened to kill her and that he had not assaulted her. She acknowledged that she had given the police a written statement of inculpatory allegations, but said that she had only written it because she was drunk, upset, and angry; and because she had not understood that, at the time, the defendant had only been trying to calm her down. She testified that she was still in love with the defendant and wanted the charges dropped.

Rouvalis's testimony was similar to the statements of an affidavit that she had signed on October 22, 2003, the date of the defendant's bail hearing in this case. Between October 5 and October 17, 2003, the defendant made a series of telephone calls to Rouvalis from jail in which he discussed the contents of the affidavit and her expected testimony at his bail hearing on October 22.[4] Rouvalis signed the affidavit after those telephone calls from the defendant. Six of these recorded calls form the basis for the witness intimidation charge. The determination of intimidation requires a detailed evaluation of them.

The first call is fourteen minutes and thirty-six seconds long. Three minutes into the call, Rouvalis, referring to her affidavit, states, "This is what your lawyer wrote up. I didn't write any of that." Fifty seconds later the defendant responds, "Motherfuckers better get together, and get fucking smart, quick!" in specific reference to Rouvalis and his lawyer. For the next minute, the defendant explains why he wants Rouvalis to alter the affidavit and what he does not want in it. Two minutes later, he states, "You fucking change your attitude with me right now." The

---

[3]The written statement was admitted in evidence, but a copy is not in the record on appeal. At trial, Rouvalis testified that her written statement included the following brief account of the incident: "He came out [of the room], caught me, shoved his hand down my throat, and pushed as hard as he could. I could not breathe. . . . And then people came out and he left me alone. . . . I was coughing up blood and my throat hurt real bad."

[4]Recordings of the telephone conversations span about seventy-five minutes and are contained on a compact disc admitted in evidence and played for the jury. It is part of the record on appeal.

call continues with the parties arguing and the defendant telling her to pay attention. At the ten minute and twenty second mark, Rouvalis asks, "Just tell me what to do!" At the eleven minute mark, the defendant says, "You are gonna fucking follow my directions," to which Rouvalis replies, "I am gonna hang up right now." The defendant responds with, "You are not gonna fucking hang up, Deb, do not fucking dare."

The second call is very short. The defendant states, "Are you ready to respect me!" Rouvalis becomes upset and hangs up.

The third call is thirteen minutes and thirty-three seconds long. At the outset the defendant tells Rouvalis, "Deb, listen, you put me in here. We are doing this my way. . . . I said you are going to do it my way, ok? Now, are you ready to listen to every word I say?" A number of outbursts follow from both parties. The defendant tells Rouvalis at the eight minute and twenty-two second mark, "You better straighten [the affidavit] the fuck out." After more discussion, the defendant, at the eleven and one-half minute mark, demands that she "change it, to what I say [the affidavit] said . . . ."

In the fifth call, after the defendant blames the August 18, 2003, events on Rouvalis because she left the room, Rouvalis becomes exasperated and asks the defendant, "Should I really write down the truth?" At the five minute and fifty second mark, Rouvalis proposes to include in the affidavit her version of the altercation between them one weekend prior to the August 18 incident in Provincetown. The defendant reacts vigorously. "You are not going to fucking fuck this up. . . . Do not even go there with any other fucking weekend. There were no police that . . . . Listen, you fucking idiot, what is wrong with you? Why are you so sick in the head, Debbie? Out to fuck things up."

At trial, the defendant testified in his own behalf. He claimed that, after he had criticized Rouvalis about the crumbs in bed, she had run out of the room and begun screaming. He had followed her down the hall. He had caught up to her and put his hand over her mouth and told her not to make a scene. He had begun to move her toward the room by placing his other hand on her back. Then his hand had accidentally slipped into her mouth as she continued to scream. Rouvalis had bitten him and not let go, so he had pushed his thumb further down her throat

to cause a gag reflex. Only then was he able to get his thumb out. As he had assisted her back to their room, she had started to fall toward an open window and he had "pulled her in." When he had heard a hallway observer yell, "Let go of that woman," he had gone downstairs and later returned to the room.

*Discussion.* 1. *Denial of motion for required finding of not guilty.* The defendant argues that the trial judge wrongly denied his motion for a required finding of not guilty on the charge of intimidation of a witness, brought after the Commonwealth had rested, because no rational trier of fact could have found beyond a reasonable doubt that the defendant had tried to influence Rouvalis by means of intimidation or threat of force.

a. *Standard of review.* A finding of not guilty shall be entered "if the evidence is insufficient as a matter of law to sustain a conviction on the charge." Mass.R.Crim.P. 25(a), 378 Mass. 897 (1979). In reviewing the denial of a motion for a required finding of not guilty, "we must look at the evidence in the light most favorable to the Commonwealth to determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Ruci,* 409 Mass. 94, 96 (1991), citing *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). In evaluating the sufficiency of the evidence, we resolve all issues of credibility in favor of the Commonwealth. *Commonwealth* v. *James,* 424 Mass. 770, 785 (1997).

b. *Sufficiency of the evidence of witness intimidation.* To obtain a conviction of witness intimidation under G. L. c. 268, § 13B,[5] the Commonwealth must prove beyond a reasonable doubt that "(1) the target of the alleged intimidation was a witness in a stage of a criminal proceeding, (2) the defendant wil-

---

[5]At the time of the defendant's telephone calls from jail, G. L. c. 268, § 13B, provided that "[w]hoever, directly or indirectly, willfully endeavors by means of . . . intimidation, force or express or implied threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial . . . shall be punished . . . ." The current version of the statute, which is not at issue, as appearing in St. 2006, c. 48, § 3, and effective as of March 30, 2006, provides that "[w]hoever, directly or indirectly, willfully . . . *threatens, or attempts or causes physical injury* [or] *emotional injury* . . . *to* . . . *or* . . . intimidates or harasses another person who is . . . a witness or potential witness at any stage of a criminal . . . trial or other criminal proceeding of any type . . . shall be punished . . . ."

fully endeavored or tried to influence the target, (3) the defendant did so by means of intimidation, force, or threats of force, and (4) the defendant did so with the purpose of influencing the complainant as a witness." *Commonwealth* v. *Robinson*, 444 Mass. 102, 109 (2005), quoting from *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. 797, 799 (1998).

The defendant acknowledges that he had discussions with Rouvalis concerning the contents of the affidavit which he expected her to prepare and to submit in his case. The defendant further concedes that these discussions included heated arguments comprised of cursing and screaming. He contends, however, that none of his statements was literally and overtly threatening; and that an argument, by itself, is insufficient to warrant a finding of intimidation. See *Commonwealth* v. *Robinson*, 444 Mass. at 111. This characterization of the telephone conversations artificially separates language from emotion and the speakers from their violent history. It understates, also, the cumulative force of the multiple conversations.

"Intimidation . . . is putting a person in fear for the purpose of influencing his or her conduct." *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. at 799. See *Commonwealth* v. *Drumgoole*, 49 Mass. App. Ct. 87, 90-91 (2000). Proof may materialize from the fair inferences drawn from circumstantial evidence. *Commonwealth* v. *Potter*, 39 Mass. App. Ct. 924, 926 (1995), quoting from *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989) ("[a]n inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable' "). "The assessment whether the defendant made a threat is not confined to a technical analysis of the precise words uttered. Rather, the jury may consider the context in which the allegedly threatening statement was made and all of the surrounding circumstances." *Commonwealth* v. *Sholley*, 432 Mass. 721, 725 (2000), cert. denied, 532 U.S. 980 (2001). See *Commonwealth* v. *Milo M.*, 433 Mass. 149, 154 (2001). See also *Commonwealth* v. *Chou*, 433 Mass. 229, 234 (2001) ("language properly may be understood and treated as a threat even in the absence of an explicit statement of an intention to harm the victim as long as circumstances support the victim's fearful or apprehensive response").

At trial, evidence of witness intimidation included the six tape-recorded telephone calls made by the defendant from jail to Rouvalis, his girlfriend and the victim of his assault, about the substance of her affidavit and testimony for submission at his bail hearing. In each of the conversations, the defendant controlled the direction of the discussion, often ordered Rouvalis to calm down and to repeat that she loved him, and repeatedly admonished her for not following his instructions. A rational trier of fact could have found that the defendant's statements to Rouvalis, a sampling of which included such vituperative remarks as "get fucking smart, quick," "you're going to change it, to what I say," "[y]ou fucking change your attitude with me right now," and "[y]ou are not going to fucking fuck this up," coupled with the evidence of his violent assault upon her two months earlier, caused Rouvalis to fear the defendant. See *Commonwealth* v. *Drumgoole*, 49 Mass. App. Ct. at 91.

The time and the circumstances of the contact bolster this conclusion. See *Commonwealth* v. *Robinson*, 444 Mass. at 111, citing *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. at 800-801. The defendant's numerous calls came in the days immediately preceding his bail hearing and conveyed his anger over his custody, a condition he blamed on Rouvalis. The intensity, timing, and nature of his demands implied that he would harm her if she did not comply with his directions. Most important, the jury were entitled to infer the danger of further physical and emotional harm in light of the motel assault and battery for which they delivered a verdict of guilt.[6]

The defendant contends that Rouvalis recanted her original testimony before these telephone conversations.[7] Neither the timing nor the success of the alleged intimidation is material. *Commonwealth* v. *Robinson*, *supra* at 109 ("[t]he statute punishes anyone who 'wilfully endeavors' to intimidate a witness; it does not require that the intimidation be successful"). The purpose of G. L. c. 268, § 13B, is "to protect witnesses from being bullied

___

[6]As already noted, the defendant has made no argument on appeal concerning the sufficiency of the evidence on that charge.

[7]The defendant improperly relies on the affidavits of Rouvalis and himself, executed on March 21, 2006 (submitted in support of his motion for a new trial), as well as other statements not in evidence before the jury.

or harried so that they do not become reluctant to testify or to give truthful evidence in investigatory or judicial proceedings," and thereby to protect the public interest in the uninhibited administration of justice. *Commonwealth* v. *Drumgoole*, 49 Mass. App. Ct. at 90, quoting from *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. at 799.

In light of the abusive nature of the defendant's relationship with his girlfriend and the vehemence and timing of his demands, a rational jury could have concluded that the defendant had endeavored to influence Rouvalis by means of force or threats of force in violation of G. L. c. 268, § 13B.[8]

2. *Denial of motion for new trial without a hearing.* After the jury convicted the defendant of assault and battery and witness intimidation, he filed a motion for a new trial under Mass.R. Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). He asserted that his counsel had been ineffective in multiple instances before and during the trial. The defendant argues that the judge wrongly denied the motion without an evidentiary hearing.

a. *Standard of review.* Generally, appellate courts give "great deference" to the judge's disposition of a rule 30 motion, "especially when he or she was the trial judge." *Commonwealth* v. *Delacruz*, 61 Mass. App. Ct. 445, 450 (2004), citing *Commonwealth* v. *Barnette*, 45 Mass. App. Ct. 486, 493 (1998). The motion judge may require an evidentiary hearing if substantial issues involve facts outside of the trial record and concern counsel's actions or omissions. See *Commonwealth* v. *Licata*, 412 Mass. 654, 660-662 (1992), overruled on other grounds by *Commonwealth* v. *King*, 445 Mass. 217 (2005); *Commonwealth* v. *Burgess*, 434 Mass. 307, 317-318 (2001). "The decision whether to hold an evidentiary hearing is committed to the discretion of the motion judge, and we review that decision for an abuse of discretion." *Commonwealth* v. *Denis*, 442 Mass. 617, 628 (2004). See *Commonwealth* v. *Goodreau*, 442 Mass.

---

[8]Unlike its predecessor, the current G. L. c. 268, § 13B(1)(*a*), as appearing in St. 2006, c. 48, § 3 (effective as of March 30, 2006, and not at issue in this proceeding), specifically addresses conduct that "threatens, or attempts or causes . . . emotional injury."

Our conclusion, of course, does not prevent counsel and investigators from proper approach to potential witnesses as sources of exculpatory evidence.

341, 348 (2004). The factors governing the entitlement to a hearing are the "seriousness of the issue" raised and the "adequacy of the defendant's showing on that issue." *Commonwealth* v. *Denis, supra.* A claim of ineffective assistance of counsel raises " 'an issue of constitutional importance' that readily qualifies as a serious issue." *Id.* at 629, quoting from *Commonwealth* v. *Licata, supra* at 661.

Because the defendant raised an issue of constitutional importance, we focus on the adequacy of the showing on that issue. *Commonwealth* v. *Denis, supra.* Although supporting materials "filed by a defendant need not prove the issue raised therein, they must at least contain sufficient credible information to cast doubt on the issue." *Ibid.,* citing *Commonwealth* v. *Licata, supra* at 662. See *Commonwealth* v. *Britto,* 433 Mass. 596, 608 (2001); *Commonwealth* v. *Goodreau, supra.*

A two-stage analysis determines whether an act or omission on the part of counsel constitutes ineffective assistance of counsel. *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). The first step is to inquire whether there has been "serious incompetency, inefficiency, or inattention of counsel," i.e., behavior falling "measurably below" that expected "from an ordinary fallible lawyer." *Ibid.* The second step is to determine whether the shortcomings of counsel deprived the defendant "of an otherwise available, substantial ground of defence." *Ibid.* If the defendant argues that counsel's strategy or tactics were faulty, he must show that the challenged tactical judgments were "manifestly unreasonable." *Commonwealth* v. *Gonzalez,* 443 Mass. 799, 809 (2005), quoting from *Commonwealth* v. *Parker,* 420 Mass. 242, 248 n.7 (1995). We conclude that the motion judge did not abuse his discretion by his determination that the defendant had failed to make an adequate showing with respect to the alleged instances of ineffective assistance of counsel before and during the trial.

b. *Joinder of indictments.* The defendant claims that his attorney was ineffective for failing to object to joinder of the charges for assault and battery and intimidation of a witness. Where offenses are related, "[t]he trial judge shall join the charges for trial unless he determines that joinder is not in the best interests of justice." Mass.R.Crim.P. 9(a)(3), 378 Mass.

859 (1979). Offenses are related if "they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan." Mass.R.Crim.P. 9(a)(1), 378 Mass. 859 (1979). See *Commonwealth* v. *Mamay*, 407 Mass. 412, 416 (1990). Whether joinder of charges resulted in undue prejudice "turns, in large measure, on whether evidence of the defendant's other offenses would have been admissible at a separate trial on each set of indictments." *Commonwealth* v. *Wilson*, 427 Mass. 336, 346 (1998).

In this case, the two offenses are related because they represent a series of events involving the same two individuals and stemming from the August 18, 2003, incident. See *Commonwealth* v. *Gagnon*, 45 Mass. App. Ct. 584, 590 (1998), quoting from *Commonwealth* v. *Wilson*, *supra* at 345 (although "[f]actors such as time and location play an important role in determining whether offenses are related . . . our cases have allowed considerable differences with respect to these factors and other factual circumstances"). See also *Commonwealth* v. *Pillai*, 445 Mass. 175, 179-181 (2005); *Commonwealth* v. *Kruah*, 47 Mass. App. Ct. 341, 347 (1999) (failure to pursue futile motion did not constitute ineffective assistance).

The defendant argues that allowing the jury to hear heated, profanity-filled arguments with his girlfriend "impacted" the jury's view of the defendant and of his culpability on the assault charges. Although the prosecution could not have introduced the phone calls for the purpose of demonstrating the defendant's bad character or propensity to commit crime, *Commonwealth* v. *Barrett*, 418 Mass. 788, 793 (1994), the phone conversations would have been admissible as consciousness of guilt evidence, see *Commonwealth* v. *Wilson*, 427 Mass. at 346-347, as well as subsequent bad acts evidence to show motive or intent to commit the underlying assaults. See *Commonwealth* v. *Butler*, 445 Mass. 568, 574 & n.6 (2005). Moreover, "[t]he jury were entitled to consider evidence that depicted the hostile relationship between [the witness] and the defendant and helped to explain [the witness's] recantation, so that they could adequately assess her credibility, a central issue at trial." *Id.* at 576. The defendant has not shown that his counsel was incompetent

or that joinder of the two indictments deprived him of an otherwise available, substantial ground of defense. See *Commonwealth v. Wilson, supra* at 346-347.

c. *Preparation of the recanting affidavit.* The defendant makes the dubious argument that his attorney was ineffective for advising him to assist Rouvalis with her affidavit, because it placed him in a "dangerous situation" that resulted in the charge of witness intimidation.

There is certainly no record support for the contention that his lawyer told the defendant to obtain a statement from Rouvalis by means of intimidation. The defendant relies on his affidavit of March 21, 2006, submitted in support of a request for an evidentiary hearing upon his motion for a new trial. The trial judge appears to have found the affidavit unpersuasive. See, e.g., *Commonwealth v. Grant,* 426 Mass. 667, 673 (1998) (a judge is free to disregard as self-serving a defendant's affidavit). In any event, there is nothing in that affidavit to suggest that the defendant's lawyer advised him to obtain a statement from Rouvalis by means of intimidation. The effective assistance of counsel does not include the ability to predict and to prevent a client's future criminal behavior.

d. *Cross-examination on the issue of strangulation.* Similarly unavailing is the defendant's claim that his attorney performed ineffectively by elicitation of damaging testimony from a police officer and the paramedic about red marks on Rouvalis's neck suggesting strangulation. Defense counsel embarked on this line of questioning for apparent tactical reasons. After asking the officer and paramedic about the redness, he impeached the testimony of both witnesses with the medical records, which omitted any reference to a neck injury, and then argued the point in closing. Far from being ineffective, that tactic may have contributed to the defendant's acquittal on the charge to which strangulation was most relevant, assault with intent to kill. The challenged tactical judgments were not "manifestly unreasonable." See *Commonwealth v. Gonzalez,* 443 Mass. at 809.[9]

3. *Ineffective assistance of counsel at the Appellate Division.*

---

[9]We have carefully examined the three other claimed instances of ineffective assistance advanced in the defendant's brief: (a) defense counsel's failure

The defendant appealed the sentence imposed on the intimidation charge to the Appellate Division of the Superior Court pursuant to G. L. c. 278, § 28B. After a hearing, the Appellate Division amended the original sentence of not less than four and not more than seven years to not less than seven nor more than nine years in State prison.[10] The defendant claims that better work by counsel could have averted this increase in his sentence. In support of his argument, he contends that his counsel (a) withdrew after his sentencing on December 2, 2004, and did not have the authority to represent the defendant before the Appellate Division; (b) failed to inform him of the pending sentence review hearing before the Appellate Division; (c) failed to advise him that the appellate panel had the power to affirm, reduce, or *increase* his sentence and that with his criminal history he ran a substantial risk of an increase of sentence; and (d) did not adequately explain the defendant's criminal record to the panel. The only support for these contentions is the defendant's affidavit.

A criminal defendant may raise the issue of ineffective assistance of counsel at the Appellate Division by means of a rule 30(b) motion for a new trial. See *Commonwealth* v. *Callahan*, 419 Mass. 306, 307-308 (1995) (the question whether the Appellate Division proceeding denied the defendant his right of due process was properly before the Supreme Judicial Court after the trial judge had denied a rule 30 motion). See also *Commonwealth* v. *Cowie*, 404 Mass. 119, 122-123 (1989) (rule 30[b] "fully accords with due process as a remedy for the defendant's frustrated right of appeal").

The sole factual basis for the defendant's claim of ineffective assistance at the Appellate Division proceeding consists of his affidavit allegations that his trial counsel had withdrawn on

---

to object to certain hearsay statements by motel observers as related in police testimony; (b) counsel's failure to object to the inclusion of several arguable references to prior bad acts appearing in Rouvalis's recanting affidavit admitted at trial; and (c) counsel's failure to report three separate threats of physical harm to him by Rouvalis's father as a supposed inhibition of his best efforts at trial. After thorough consideration of the record and pertinent case law, we are satisfied that these alleged shortcomings had no effect upon the outcome of the trial.

[10]On the charge of assault and battery the trial judge sentenced the defendant to a house of correction for two and one-half years, suspended, with probation for nine years. The defendant did not appeal from that sentence.

January 12, 2005; that the Department of Correction had transported him to the Appellate Division hearing without warning on May 9, 2005; that he had been surprised to find his former trial attorney present in the court room as his representative rather than his appellate attorney; that no one had informed him of his right to withdraw his sentence appeal; and that his trial attorney had inadequately responded to the misrepresentation of his criminal history to the panel by the prosecutor. In his brief in this court, the defendant asserts that counsel did not warn him of his exposure to an increased sentence.

Conspicuously absent from the materials presented to the motion judge were any explanatory or corroborating affidavits from trial counsel and appellate counsel and any record of the proceedings in the Appellate Division. The latter record material would reflect either written instructions provided to the defendant before the hearing or oral advice communicated at the beginning of the hearing by the panel. It would ordinarily be readily available for the submission to a motion judge. General Laws c. 278, § 28B, second par., as appearing in St. 1968, c. 666, § 2, provides, inter alia, that "no sentence shall be increased without giving the defendant an opportunity to be heard." Either by standard colloquy or by special warning, a panel encountering a candidate for increased incarceration would be likely to provide a timely notice of that risk. See, e.g., *Commonwealth* v. *Callahan*, 419 Mass. at 309-310 (the court affirmed the denial of a rule 30[a] motion alleging ineffective assistance of counsel at the Appellate Division; the transcript of the Appellate Division hearing showed that the defendant had received warning of the risk of an increase of his sentence).

The defendant has asserted a recognizable constitutional claim. Sentence review at the Appellate Division is a "critical stage" of the proceeding, "at which the defendant must be afforded [effective] assistance of counsel." *Croteau, petitioner*, 353 Mass. 736, 738 (1968). See *Gavin* v. *Commonwealth*, 367 Mass. 331, 339-340 (1975). The defendant is entitled to notice of the issues to be heard, *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 275-276, cert. denied, 459 U.S. 864 (1982); "help of counsel in deciding whether to appeal with its attendant risk," *Gavin* v. *Commonwealth, supra* at 340; and "appearance before the tribunal with assistance of counsel," *ibid.*

However, he must show that his claim of ineffective assistance of counsel embodies a genuine issue. *Commonwealth* v. *Denis*, 442 Mass. at 629. The present affidavit allegations are conclusory, elliptical, and uncorroborated. They fall well short of a respectable showing for the motion judge. He was entitled to deny the motion for relief supported only by the defendant's inadequate affidavit.[11] That ruling was not an abuse of discretion. *Commonwealth* v. *Gould*, 413 Mass. 707, 716 n.9 (1992). See *Commonwealth* v. *Grant*, 426 Mass. at 673.

*Conclusion.* For these reasons we affirm the convictions of assault and battery and of intimidation of a witness and the trial judge's denial of the motion for a new trial without an evidentiary hearing.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

---

[11]A proper effort upon this claim must include the entire written and oral record of proceedings in the Appellate Division and should include explanatory affidavits, if appropriate, from the attorneys. These sources of information do not preclude others.