NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-198

COMMONWEALTH

vs.

JOSEPH I. AMATO, THIRD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant, Joseph I. Amato, III, was convicted of a series of crimes stemming from a violent altercation with his husband, C.P.[1]  On appeal, the defendant contends that the judge erred in denying his motion to dismiss, and in certain evidentiary rulings.  He also claims that the evidence of intimidation of a witness was insufficient, and that he received the ineffective assistance of counsel.  We affirm.

Background.  On September 30, 2020, at approximately 8:30 P.M., a Provincetown police dispatcher received a 911 call

_____

[1] The defendant was convicted of assault and battery with a dangerous weapon resulting in serious bodily injury, assault and battery on a family or household member, withholding evidence, and two counts of intimidation of a witness.  The defendant was acquitted of assault with intent to murder.

from C.P., who reported that the defendant stabbed him in the neck and that he was "bleeding out." Officers responded to the home, where they found C.P. alone and "bleeding heavily," and noted blood on the bedroom wall and bed, and broken glass on the bed and the floor. When asked about his injury, C.P. told the police that he had been stabbed.

After emergency personnel removed C.P. from the home, the defendant returned to it, wearing only boxer shorts. The defendant had a visible injury on his hand, but no visible injuries to his face or neck. The defendant spontaneously said that he "came to see if [C.P.] was okay. It was self-defense," and offered his cell phone in support of his claim. Police took the phone and placed it into an electrostatic bag to prevent it from being "remotely wiped." A voice note that was created just prior to the 911 call on September 30th was retrieved from the phone.

C.P. was transported, via MedFlight, to a Boston hospital. Paramedics estimated that C.P. lost a liter of blood at the scene, and observed a "laceration behind the right side[] of [C.P.'s] neck, . . . [and another laceration on his] right hand." One paramedic wrote in his report that C.P. claimed "he was assaulted by [the defendant] with an unknown type of weapon."

2

While in custody, between October and December 2020, the defendant made over one hundred hours of phone calls, all of which were recorded, and many of which serve as the basis for the witness intimidation indictments. For example, on an October 3rd call the defendant told his mother to "[t]ell [C.P.] what I told you happened." The next day, on a recorded call, the defendant told C.P. to report the phone that police seized as stolen so that the contents could be erased. On an October 6th call, the defendant repeatedly told C.P. that he fell on September 30th. On one of two calls on November 4th, the defendant asked C.P., "Why are you [accusing me of hitting you with a bottle] on this recorded line?" In the second call, the defendant told C.P. not to "say[] things like that on a recorded line anymore, because you're going to get me in trouble like you did with the 911 call, so don't say things like that anymore, okay." On a December 1st call, the defendant told C.P. that his release from custody was contingent on whether C.P. wanted him home.

At trial, C.P. testified that he was injured by a shard of glass that lodged behind his right ear when he fell onto the floor after a scuffle with the defendant over a bottle of vodka.

Discussion. 1. Motion to dismiss. The defendant claims that the motion judge erred in denying his motion to dismiss the witness intimidation charges because the Commonwealth presented

3

insufficient evidence to the grand jury. "A grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him for the crime" (quotation and citation omitted). Commonwealth v. Stirlacci, 483 Mass. 775, 780 (2020). "Probable cause is a considerably less exacting standard than that required to support a conviction at trial" (quotation and citation omitted). Id. We view the evidence heard by the grand jury in the light most favorable to the Commonwealth. See Commonwealth v. Rakes, 478 Mass. 22, 29 (2017).

A conviction for witness intimidation pursuant to G. L. c. 268, § 13B, requires proof of four elements:

> "(1) a possible criminal violation occurred that would trigger a criminal investigation or proceeding; (2) the victim would likely be a witness or potential witness in that investigation or proceeding; (3) the defendant engaged in intimidating behavior, as defined in the statute, toward the victim; and (4) the defendant did so with the intent to impede or interfere with the investigation or proceeding."

Commonwealth v. Fragata, 480 Mass. 121, 122 (2018). Here, the grand jury heard testimony from a detective that the defendant made more than one hundred telephone calls to C.P., many of which concerned the events of September 30th. The detective described these calls as including conversations where the defendant instructed C.P. not to make certain statements on a recorded line, challenged C.P. about his 911 call, coached C.P. about his memories of the night of the assault, and asked C.P.

4

to delete recordings from his cell phone.  From this it was reasonable for the grand jury to infer that the defendant intimidated or harassed C.P.  See Commonwealth v. Cohen, 456 Mass. 94, 124 (2010).  That the Commonwealth did not present evidence of threatening remarks or intimidating words is of no moment as the grand jury is permitted to "consider the context . . . and all of the surrounding circumstances." Commonwealth v. Gardner, 102 Mass. App. Ct. 299, 304 (2023), quoting Commonwealth v. Pagels, 69 Mass. App. Ct. 607, 613 (2007). Here, those circumstances include the number of calls made over a relatively brief period of time that consisted of attempts to influence C.P.'s testimony and directed him to erase evidence. The motion to dismiss was properly denied.

2.  Evidentiary rulings.  a.  Recorded telephone statements.  The defendant claims that the admission of C.P.'s statements accusing the defendant of hitting him with a bottle was erroneous and the statements so extraordinarily prejudicial that they gave rise to a substantial risk of a miscarriage of justice.  See Commonwealth v. Rivera, 97 Mass. App. Ct. 285, 289 (2020) (where trial counsel fails to object, defendant's claims are reviewed for substantial risk of miscarriage of justice). In his brief, the defendant posits that these statements are not adoptive admissions, their admission impugned his right to remain silent, and the statements are not permissible

5

impeachment evidence as they do not constitute prior inconsistent statements. However, the decision of trial counsel to agree to the admission of what might otherwise be inadmissible evidence could have been a conscious strategic decision that was not unreasonable, particularly where he used some of the phone calls as part of the defense, referencing them in his opening and closing arguments, and in his redirect examination of C.P. See Commonwealth v. Amran, 471 Mass. 354, 362 (2015). Because the defendant did not file a motion for new trial on this, or any basis, we are unable to evaluate whether defense counsel made a strategic choice, and accordingly, this claim fails.

The defendant also claims that the admission of the recorded phone calls wherein he refused to respond to C.P.'s accusations that the defendant hit him in the head with a bottle was error. He argues that the admission of this evidence was effectively a comment on his exercise of his right to remain silent. Although the challenged evidence occurred while the defendant was incarcerated, the evidence arose during conversations with C.P., and not in response to interrogation by law enforcement. See Commonwealth v. White, 422 Mass. 487, 501 (1996). For this reason, the defendant's claim fails.

b. Additional objections. The defendant next claims that the trial judge erred when she sustained four objections made by

6

the prosecutor.[2]  We review this claim for an abuse of discretion.  See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  Prior to trial, the parties agreed that the defendant could elicit testimony from C.P. that he and the defendant were "verbally abusive to each other."  However, the judge ruled that "nothing in terms of specific acts, in terms of any violence among the [defendant and C.P.]" would be allowed into evidence.

C.P. testified that he "was like Dr. Jekyll and Mr. Hyde. While [he was] drunk, [he] wasn't the same person, and [he] was very abusive."  The judge did not abuse her discretion when she sustained the prosecutor's objection to this testimony as C.P. used the term abusive, without qualifying the abuse as "verbal," in contravention of the pretrial ruling.  Next, the prosecutor objected when defense counsel, during C.P.'s testimony said: "All right.  Just talk -- how would your -- what kind of things would you -- let's just talk about what you might say or that sort of thing."  Because no question was posed and the statement called for C.P. to recount prior statements, it was objectionable as to form and because it would likely have elicited an inadmissible hearsay response.  See Commonwealth v. McCollum, 79 Mass. App. Ct. 239, 257-258 (2011).

---

[2] Contrary to the defendant's representations, the Commonwealth did not object to questions put to C.P. about how he was feeling during the recorded phone calls, and the judge did not strike C.P.'s responses.

Next, in responding to a question about his behavior when he was intoxicated, C.P. answered that he became "really abusive verbally." The judge struck the answer; however, this was immediately followed by testimony from C.P. that he would become "[v]ery mean," "[r]ude," and "[v]ery offensive." Also, on redirect examination, C.P. testified that the defendant made recordings when C.P. was "drunk and verbally abusive." There was no objection to this testimony, and thus this evidence was before the jury.

Finally, the defendant claims the judge erred in precluding C.P. from describing the sound of the defendant's voice during recorded phone calls. There was no error as the recorded calls were in evidence and the jury were capable of listening to them and drawing their own conclusions, and C.P.'s lay opinion testimony would not have "assist[ed] the jury in reaching more reliable conclusions." Commonwealth v. Grier, 490 Mass. 455, 476 (2022).

3. Sufficiency of the evidence. The defendant argues that there was insufficient evidence of witness intimidation.[3] We need not repeat here the facts and the elements of the offense as set forth supra. We add, however, that the volume of

---

[3] One indictment alleged that the intimidation occurred on September 30, 2020, and the other on diverse dates from October 1, 2020, to December 4, 2020.

8

communications between the defendant and C.P. sufficed to "cause a reasonable person . . . to suffer substantial emotional distress." Gardner, 102 Mass. App. Ct. at 305. Although the defendant did not make explicitly threatening statements to C.P., he repeatedly stated that C.P. was the reason that he was in prison and, implied that C.P. was the only key to his freedom. In the context of their relationship, these words would have made a reasonable person feel intimidated or harassed by the defendant. See id. at 305-306. See also Pagels, 69 Mass. App. Ct. at 614 ("The time and the circumstances of the contact bolster" conclusion that victim was in fear).[4]

4. Ineffective assistance of counsel. Finally, the defendant claims that trial counsel was ineffective for failing to request supplemental jury instructions on self-defense and accident, and to argue the same. Generally, to prevail on an ineffective assistance of counsel claim a defendant must demonstrate that, but for his counsel's "serious incompetency, inefficiency, or inattention," Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), "the result of the proceeding would have

---

[4] To the extent the defendant claims the trial judge erred in declining to give a supplemental instruction on harassment in response to a jury question, we disagree. The defendant's proposed supplemental instruction was not responsive to the jury's question about whether it was required to find the defendant guilty by "any or all" of the listed means. See Commonwealth v. Monteagudo, 427 Mass. 484, 488 (1998)(response to jury question within discretion of trial judge).

been different."  Commonwealth v. Mahar, 442 Mass. 11, 15 (2004), quoting Strickland v. Washington, 466 U.S. 668, 694 (1984).  Here, the defendant's claim is brought in its weakest form, the trial record, and not by the preferred method for raising such claims through a motion for new trial.  See Commonwealth v. Davis, 481 Mass. 210, 222-223 (2019).  Indeed, "[t]he critical inquiry is whether counsel's choice was an informed and reasonable decision; a consideration to be assessed in light of his over-all representation of the defendant at the trial."  Commonwealth v. Frank, 433 Mass. 185, 192 (2001).  Because the record is "bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight," we cannot conclude that trial counsel's performance was deficient (citation omitted).  Davis, 481 Mass. at 222-223.

Judgments affirmed.

By the Court (Rubin, Blake & Shin, JJ.[5]),

Assistant Clerk

Entered:  April 9, 2024.

---

[5] The panelists are listed in order of seniority.

10